HARRIS *v.* THE YOUNG WOMEN'S CHRISTIAN ASSOCIATION OF TERRE HAUTE.

[No. 967S82. Filed June 4, 1968.]

*Hansford C. Mann,* and *Mann, Mann, Chaney, Johnson & Hicks,* of Terre Haute, for appellant.

*Cox, Zwerner, Gambill & Sullivan* and *Ernest J. Zwerner* and *Gus Sacopulos,* of Terre Haute, for appellee.

LEWIS, C. J.—This case was transferred to the Supreme Court by the Appellate Court of Indiana because of the allegation made by the appellant that the summary judgment statute was void as an infringement of the rule-making power of the Supreme Court of Indiana.

The appellant was the plaintiff below and brought suit against the appellee for damages for personal injuries sustained when appellant was leaving the appellee's premises where her church had rented a meeting room for a reception for its new pastor.

The issues below were decided in favor of the appellee which was granted summary judgment. This appeal is taken from order of summary judgment. Appellant contends that the Court below granted appellee summary judgment on the ground, among others, that the appellee was immune from the liability by reason of being a charity.

The appellant, Sudie Harris, at the time of her injury was age sixty-five (65), and was a member of the Terre Haute Bible Center. She attended the reception for a new pastor of her Church, which reception was held in The Young Women's Christian Association of Terre Haute, Indiana. The Bible Center had rented a meeting room in The Young Women's Christian Association for the sum of Eleven ($11.00) Dollars. Sudie Harris was not a member of The Young Women's Christian Association, nor had she ever been in the building for any

purpose. She was injured by a fall at an exit at The Young Women's Christian Association. She contends the exit was defective.

The appellee answered the complaint, and among other allegations, contends that appellee was an eleemosynary organization, and that as such a not-for-profit organization, was entitled to judgment on the grounds of charitable immunity.

The appellant argues that the doctrine of charitable immunity is "legally unsound and morally wrong." The appellant also contends that in the case at bar the appellee is not entitled to avail itself of the doctrine of charitable immunity under the doctrine of *Richardson* v. *St. Mary's Hospital* (1963), 135 Ind. App. 1, 191 N. E. 2d 337, for the reason that Sudie Harris was not a beneficiary of the alleged charity. Appellant further contends that appellee is not entitled to the doctrine of charitable immunity under the decision of *Ball Memorial Hospital* v. *Freeman* (1964), 245 Ind. 71, 196 N. E. 2d 274, because the injury was caused by the institution itself in its corporate capacity and not by any negligence on the part of its employees.

We will first consider appellant's proposition that charitable immunity is "legally unsound." The doctrine has had a long and a changing history in several of these United States. The Supreme Court of Massachusetts, in 1876, was the first American Court to indicate that a charitable institution is not responsible for its torts. *McDonald* v. *Massachusetts General Hospital* (1876), 120 Mass. 432. The decision in *McDonald, supra,* was apparently based upon the English rule that:

> "To give damages out of a trust fund would not be to apply it to those objects whom the author of the fund had in view, but would be to divert it to a completely different purpose." *Feoffees of Heriot's Hospital* v. *Ross* (1846), 12 Clark & Fin. 507, 513.

The Supreme Court of Massachusetts, in 1876, was apparently unaware that the doctrine of charitable immunity had been repudiated in the English courts as early as in 1866.

*Mersey Docks Trustees* v. *Gibbs,* L.R. 1 H.L. (1866). In commenting on this apparent misinterpretation of the English law, Justice Musmanno, speaking for the Supreme Court of Pennsylvania, said:

". . . until 1888, in the case of *Fire Insurance Patrol* v. *Boyd,* 120 Pa. 624. . . . Justice PAXSON said that the charitable immunity rule 'is hoary with antiquity and prevails alike in this country and in England.'

". . . In assumed support of his theory of immunity, Justice PAXSON spoke approvingly of a decision by the Supreme Court of Massachusetts which, in 1876, was the first American court to indicate that a charitable institution is not responsible for its torts. (*McDonald* v. *Massachusetts General Hospital,* [*supra*].) Justice PAXSON apparently did not know, when he lauded the English rule, that England had abandoned it, and apparently was unaware that the Massachusetts court built its decision on a foundation that did not exist." *Flagiello* v. *Pennsylvania Hospital* (1965), 417 Pa. 486.

Likewise, Indiana apparently followed Massachusetts, Pennsylvania, and other states, in adopting the doctrine of charitable immunity or "qualified charitable immunity."

In 1942 in *President and Directors of Georgetown College* v. *Hughes,* 130 F. 2d 810, Justice Rutledge wrote extensively on the doctrine of charitable immunity and pointed out certain factual and legal fallacies in the doctrine. Justice Rutledge said:

". . . Whether the Good Samaritan rides an ass, a Cadillac, or picks up hitch-hikers in a Model T, he must ride with forethought and caution. . . ."

Thus, Judge Rutledge continues:

". . . Only when an individual institutionalizes his charitable enterprise formally, as by incorporation or possibly creating a trust does he succeed in casting the whole burden of its negligent operation on those it injures.

"It is a strange distinction, between a charitable institution and a charitable individual, relieving the one, holding the other, for like service and like lapse in like circumstances. The hospital may maim or kill the charity patient by negli-

gence, yet the member of its medical staff, operating or attending without pay or thought of it, dare not lapse in a tired or hurried moment. (Citations.) The institution goes free. The physician pays. . . ."

"The basis of the distinction cannot be charity. . . . If charity should exempt either institutions or individuals, it should be the latter. . . ."

After the decision in *President and Directors of Georgetown College* v. *Hughes, supra,* a great many States started to re-examine the doctrine of charitable immunity. For many years, charitable immunity as a doctrine of law enjoyed weight of authority among several States. Since the decision by Judge Rutledge in *President and Directors of Georgetown College* v. *Hughes, supra,* the weight of authority has shifted sides and it is the immunity rule which is supported by the *fewer* jurisdictions.

We grant appellee that by *stare decisis* charitable immunity is the law of Indiana. We are compelled, however, to agree with the very excellent reasoning of the Supreme Court of Pennsylvania in *Flagiello* v. *Pennsylvania Hospital, supra,* in which the very expressive Justice Musmanno, speaking for the Court, said:

"Failing to hold back both the overwhelming reasons of rudimentary justice for abolishing the doctrine, and the rising tide of out-of-state repudiation of the doctrine, the defendant hospital and the Hospital Association of Pennsylvania fall back for defense to the bastion of Stare Decisis. It is inevitable and proper that they should do so. Without stare decisis, there would be no stability in our system of jurisprudence.

"Stare decisis channels the law. It erects lighthouses and flys the signals of safety. The ships of jurisprudence must follow that well-defined channel which, over the years, has been proved to be secure and trustworthy. But it would not comport with wisdom to insist that, should shoals rise in a heretofore safe course and rocks emerge to encumber the passage, the ship should nonetheless pursue the original course, merely because it presented no hazard in the past. The principle of stare decisis does not demand that we follow precedents which shipwreck justice.

"Stare decisis is not an iron mold into which every utterance by a Court, regardless of circumstances, parties, economic barometer and sociological climate, must be poured, and, where, like wet concrete, it must acquire an unyielding rigidity which nothing later can change."

Appellee further contends that if the law on charitable immunity is to be changed, it should be done by the Legislature and not by this Court. This argument has been presented to a number of jurisdictions, and we agree with the judgment of those Courts that determined that the doctrine of charitable immunity was created not by the Legislature, but by judicial decree, and that it therefore is the proper province of the Court to correct that doctrine if we find that it is not grounded in good morals and sound law. Attempts have been made to have the Legislature of Indiana correct this doctrine by Legislative enactment, but these attempts have failed; and again we are reminded of what was said in an opinion in *Knecht* v. *St. Mary's Hospital* (1958), 392 Pa. 75, 140 A. 2d 30:

". . . The Legislature has more to do besides raking through the leaves of the State Reports to discover which . . . (doctrines) should be incinerated. . . ."

The question of whether the Courts will act by judicial decree and make correction of an erroneous doctrine was presented on the question of charitable immunity to the Supreme Court of the State of Washington in *Pierce* v. *Yakima Valley Memorial Hospital Association* (1953), 43 Wash. 2d 162, 260 Pac. 2d 765. The Supreme Court said:

". . . The purported reasons for the absolute rule have been found, on analysis, to be without merit. The true role of the legislature, under the circumstances, is to restrict liability if it chooses to do so, as it did in the host-guest situation. Where the proposal is to open the doors of the court, rather than to close them, the courts are quite competent to act for themselves. . . ."

In the year 1924 when this Court wrote the case of *St. Vincent's Hospital* v. *Stine,* 195 Ind. 350, 144 N. E. 537, this

Court found that at least twenty (20) States granted charitable immunity and only three (3) did not. As of this writing, the great majority of the States deny immunity and perhaps only eight (8) or ten (10) States, including Indiana, hold to the doctrine which we believe was ill conceived and has certainly outlived any usefulness it may have had at one time. We, therefore, believe that the duty of this Court is to repudiate the doctrine of charitable immunity and in view of the fact that it is a Court-made rule, it is hereby abolished by this Court without waiting for the intervention of the Legislative Branch of Government.

We are not impressed with appellant's contention that the summary judgment statute contravenes and is in conflict with the rule-making power of the Supreme Court of Indiana. In support of her contention, the appellant contends that the summary judgment act is void under the doctrines set out in *State ex rel. Blood et al.* v. *Gibson Circuit Court* (1959), 239 Ind. 394, 157 N. E. 2d 475. In the cited case, at page 399, we find the following:

"A review of the judicial and legislative history of the State leads us to the conclusion that the power to make rules of procedure in Indiana is neither exclusively legislative nor judicial. See: Art. 7, § 4, Constitution of Indiana. *Lake Erie, etc., R. Co.* v. *Watkins* (1902), 157 Ind. 600, 62 N. E. 443; *In re Petitions to Transfer Appeals* (1931), 202 Ind. 365, 174 N. E. 812; *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399; 1 Gavit, Ind. Pleading and Practice, § 6, pp. 42-43."

The Supreme Court has not adopted a rule abrogating the summary judgment statute and, therefore, we recognize that the summary judgment statute, Burns' Indiana Statutes, Anno., § 2-2524 (1968 Repl.), is in full force and effect.

In the case at bar since the motion for summary judgment was based on four (4) separate and distinct theories, one (1) of which we have determined by this opinion to be invalid; the three (3) remaining defenses raised by appellee are:

1. contributory negligence;
2. third-party liability for the alleged tort; and
3. the Indiana Administrative Building Council's rules and regulations are not standards for negligence in civil actions.

The Court's order of summary judgment reads, omitting the formal parts thereof, as follows:

"Motion having been regularly made by the defendant for summary judgment in the defendant's favor dismissing this action as alleged in plaintiff's amended complaint as amended by interlineation, on the ground that there is no genuine issue as to any material fact and that said defendant is entitled to judgment as a matter of law;

Now, therefore, on considering defendant's said motion for summary judgment, including all exhibits made a part thereof and grounds therefor, towit: summons, and Sheriff's return thereon, the pleadings, plaintiff's oral conditional examination, deposition of witness, Grace M. Ledbetter, various contracts, affidavits, certifications and exhibits and having heard oral argument and having considered authorities cited by the parties hereto and after deliberation having been had, the court now finds that there is no genuine issue as to any material fact and that the defendant is entitled to have a summary judgment rendered in its favor as a matter of law.

It is, therefore, now ordered, adjudged and decreed that the motion for the defendant for summary judgment be and the same is hereby sustained and granted and that judgment be and the same is now and hereby entered in favor of said defendant and against the plaintiff on plaintiff's said amended complaint as amended by interlineation, with costs to be assessed and taxed against the plaintiff herein in the sum of $————.''

We are unable to determine from the Court's order of summary judgment whether or not the Court's judicial determination was based upon the defense of charitable immunity which we, by this opinion hold not to be a defense, or whether or not it was based on one (1) of the three (3) remaining defenses, or any combination thereof.

While there seems to be no Indiana case law requiring the Trial Court to specify in writing its reasons for granting a summary judgment, there are numerous judgments requiring a Court to explicitly set out its reasons for granting a motion for new trial. *Rife* v. *Karns* (1962), 133 Ind. App. 226, 181 N. E. 2d 239; *Newsom* v. *Pennsylvania Railroad Co. et al.* (1962), 133 Ind. App. 582, 181 N. E. 2d 240; *Bailey* v. *Kain* (1963), 134 Ind. App. 238, 187 N. E. 2d 366; *Harmon* v. *Arthur* (1963), 134 Ind. App. 526, 189 N. E. 2d 719.

In *Newsom* v. *Pennsylvania Railroad Co. et al. supra,* the following statement may be helpful:

"The separate motions for new trial contained many specifications of error. Without a statement of the claimed error which the court below recognized as the reason for the granting of the motions for new trial, both the appellant and this court are faced with the arduous task of not only considering each and every specification of error claimed by the appellees in their separate motions for new trial, but any other possible error which may have occurred during the proceedings and which was not specified in the motions. . . . 'good practice requires the trial court to state the reasons for its decision in writing when a motion for new trial is sustained,' . . ."

This Court amended its adopted Rule 2-6 providing that a motion for new trial is not a proper pleading after the entry of summary judgment. This amendment to Rule 2-6 reads as follows:

"The Court being duly advised in the premises, now amends Rule 2-6 by adding thereto the following paragraph:

Provided, however, a motion for a new trial shall not be appropriate for raising error claimed by reason of the entering of a summary judgment. The sustaining of a motion for a summary judgment and the granting of same may be assigned and specified separately in the assignment of errors for consideration on appeal.

Provided further, however, that in all cases prior to the effective date of this amendment, where a motion for a new trial has been filed following a summary judgment,

the parties to said action shall have the same time within which to file a transcript and assignment of errors for appeal as in those cases where a motion for a new trial is proper, and the alleged error if set forth and specified in the motion for a new trial will be considered on appeal. Approved this 22nd day of April, 1968."

The case at bar points up all of the compelling reasons for the Trial Judge specifying in an entry of summary judgment the grounds upon which such judgment is entered. Certainly there are all of the persuasive reasons for specifying the grounds of summary judgment that we would find on the ruling for a motion for new trial.

In the case before us this Court or the Appellate Court is entitled to have the court below set out the reason for the granting of the motion for summary judgment.

This cause is reversed with instructions to the court to reconsider the motion for summary judgment in the light of this opinion and to rule on said motion for summary judgment consistent with this opinion, and to state with particularity the reasons for granting any summary judgment. Prior opinions of this Court which are inconsistent with the holdings stated herein, are hereby overruled.

Arterburn and Hunter, JJ., concur; Jackson, J., concurs in result; Mote, J., not participating.

NOTE.—Reported in 237 N. E. 2d 242.