## MEIER *v.* COMBS

[No. 769A136. Filed October 26, 1970. Rehearing denied December 2, 1970. Transfer denied March 3, 1971.]

*Louis Pearlman, Jr., Brent E. Dickson,* of Lafayette, for appellant.

*C. G. Ball, Ball, Eggleston, King & Bumbleburg,* of Lafayette, for appellee.

WHITE, J.—This is an appeal by the plaintiff from a summary judgment for the defendant in a damage suit. The

defendant is a licensed physician (M.D.) and his motion for summary judgment is premised on the undisputed fact that this suit was commenced more than two years after the cause of action accrued. He contends it is barred by the following statute:

> "No action of any kind for damages, whether brought in contract or tort, *based upon professional services rendered or which should have been rendered,* shall be brought, commenced or maintained in any of the courts of this State against physicians, dentists, surgeons, hospitals, sanitariums, or others, unless said action is filed within two years from the date of the act, omission or neglect complained of."[1] (Emphasis added.)

Plaintiff-appellee contends that there is a genuine issue of material fact as to whether this action for damages is "based upon professional services rendered".

The action arises out of events which occurred on May 7, 1958, when plaintiff was an under-graduate student at Purdue University. Defendant at that time was Medical Director of the Purdue University Student Health Service.

The complaint is denominated merely, "Complaint for Damages". The pertinent allegations of its legal Paragraph I are:

> "1. That on the 7th day of May, 1958, the Defendant LOYAL W. COMBS, M.D., in conspiracy with one Frank D. Sandefur, one James A. Sell and one Donald E. Jones, and pursuant to said conspiracy, forced Plaintiff, under threat of force and violence, to accompany said Frank D. Sandefur, James A. Sell and Donald E. Jones to Marion, Indiana, where Frank D. Sandefur, James A. Sell and Donald E. Jones caused Plaintiff to be confined in the Veterans Hospital.
>
> "2. That Plaintiff was deprived of his liberty and confined in said Hospital, as aforesaid, against his express wish and desire, and without his consent."

---

1. Ind. Acts 1941, Ch. 116, § 1, being Burns Ind. Stat. Ann. (1968 Repl.) § 2-627.

Virtually the same allegations are repeated in legal Paragraph II except that the named non-parties are characterized as defendant's agents rather than as his co-conspirators. Paragraph II's rhetorical paragraphs 1 and 2 read as follows:

"1.    That on the 7th day of May, 1958, the Defendant LOYAL W. COMBS, M.D., by his agents Frank D. Sandefur, James A. Sell and Donald E. Jones, forced Plaintiff, under threat of force and violence, to accompany said Frank D. Sandefur, James A. Sell and Donald E. Jones to Marion, Indiana, where the said Frank D. Sandefur, James A. Sell and Donald E. Jones caused Plaintiff to be confined in the Veterans Hospital.

"2.    That Plaintiff was deprived of his liberty and confined in said Hospital, as aforesaid, against his express wish and desire, and without his consent."

Rhetorical paragraphs 3 and 4 of legal Paragraphs I and II are allegations of injury and damage. The identical prayer of each legal paragraph is for $250,000.00 damages.

The record also includes paragraphs of answer which plead that the cause of action did not accrue within two years of the commencement of the action and replies that plaintiff was of unsound mind at the time the causes of action accrued and continuously thereafter for more than four years. This alleged incompetence would serve to toll the running of the 1881 statute of limitations[2] but not the quoted 1941 statute.[3]

The defendant's motion for summary judgment is supported evidentially by the defendant's affidavit. Plaintiff filed a re-

2.    Burns Ind. Stat. Ann. (1968 Repl.) §§ 2-601, 2-602 and 2-603. § 2-605 is also a part of the 1881 Act and provides that persons under legal disabilities may bring their actions within two years after the disability is removed.

3.    The 1941 statute is Burns Ind. Stat. Ann. (1968 Repl.) § 2-627. § 2-605, supra, which tolls the 1881 statute does not apply to the 1941 statute, (§ 2-627) as to which there are no statutory exceptions, although an exception for fraudulent concealment has been judicially declared. Guy v. Schuldt (1956), 236 Ind. 101, 138 N. E. 2d 891; Burd v. McCullough (1954), 217 Fed. 2d 159; Blank v. Community Hospital of Indianapolis (1968), 143 Ind. App. 333, 240 N. E. 2d 562, 15 Ind. Dec 399; Ostojic v. Brueckmann (7th Cir. 1968), 405 F. 2d 302, 16 Ind. Dec. 299.

sponse to defendant's motion, which response incorporated defendant's conditional examination and plaintiff's sworn answers to written interrogatories submitted by defendant. The interrogatories did not inquire as to the events of May 7, 1958, and plaintiff filed no affidavit or other evidence challenging defendant's account of the events of that day. The result is that there is no dispute as to the *evidentiary* (or underlying) facts. Which is not to say, however, that the ultimate facts have thus been established without leaving unresolved any genuine issue of material fact. As the Supreme Court said in *Cole* v. *Sheehan Construction Co.* (1944), 222 Ind. 274, 280, 53 N. E. 2d 172:

> ". . . [I]t does not necessarily follow that there was no conflict in the evidence merely because the testimony was undisputed. A conflict may arise out of the testimony of a single witness, though it is not disputed by any other testimony. *McKee* v. *Mutual Life Ins. Co.* (1943), *ante* p. 10, 51 N. E. (2d) 474."

In brief outline the pertinent evidentiary facts, all undisputed, are these:

Plaintiff, the student, had been to the university president's office about a week before May 7, 1958, demanding to see President Hovde to discuss an alleged narcotics ring involving faculty members, hypnosis of students in class, bizarre sexual activities, etc. His agitated emotional state aroused concern and he was requested to report these matters to the Dean of Men's Office on May 7, 1958. Arrangements were made for the defendant and a clinical psychologist to be there with the Dean. The three of them talked with plaintiff when he appeared. From the interview the defendant made a determination that plaintiff was "an obviously disturbed individual suffering from hallucinations and with distinct indications of a paranoidal tendency demanding immediate specialized professional and psychiatric diagnosis and treatment." Defendant asked plaintiff if he would go to Marion (Indiana) to report to the authorities there the matters he had reported to

the Dean. When plaintiff consented, defendant sent him home to get his clothes, telling him that campus police would come to his residence later and furnish him transportation to Marion. Defendant purposely did not tell plaintiff that he was to be taken to the Veteran's Administration Hospital in Marion. His stated reason was that he did not wish to provoke plaintiff in his agitated state. Defendant, however, made arrangements with the V.A. Hospital authorities at Marion for plaintiff's admission and with the campus police to transport him there, which they did.[4] There is no evidence that judicial action was taken to obtain a commitment. There is no evidence of how plaintiff's physical entry into the hospital was actually accomplished. There is no sworn denial of the allegation in plaintiff's complaint that he was confined "against his express wish and desire and without his consent." Since plaintiff, himself, has not supported that allegation by affidavit or other evidentiary material, it cannot be taken as true, but it is sufficient to raise doubts. The same is true of the conclusional allegations that those who transported plaintiff to the hospital and accomplished his physical admittance were defendant's co-conspirators or agents.

We now quote from the learned *nisi prius* judge's opinion rendered at the time he granted summary judgment:[5]

> "In the circumstances at hand, it is clear that the defendant rendered professional services to the plaintiff on May 7, 1958. Plaintiff had gone to the office of the president of the university and demanded to see the president. He was obviously in an agitated state of mind, and it seems to have been apparent even to a layman that he was mentally ill. Since the plaintiff was a Purdue Student and the defendant was the head of the Purdue Student Health Service, the defendant was called to come to the office of

4. There is evidence that the persons named in the complaint as defendant's agents or co-conspirators are the campus police who transported plaintiff.

5. We accept this opinion as fulfillment of the requirement that the trial courts state their reasons for granting summary judgment. *Harris v. Young Women's Christian Assoc.* (1968), 250 Ind. 491, 237 N. E. 2d 242, 247, 14 Ind. Dec. 420, 428.

the Dean of Men to examine the plaintiff. This he did, talking to him for fifteen to twenty minutes and diagnosing him as being mentally ill and dangerous. He then made arrangements to have him taken to a mental hospital. When a doctor is called to decide whether a person is ill, examines him, determines that he is ill, and sends him to a hospital, it would require a very strained construction to say that he has not rendered professional services.

"Having answered the question of whether professional services were rendered, we come to the second question: is plaintiff's cause of action based upon such services? In this connection, plaintiff contends that if professional services were rendered, they ceased when the defendant had completed his diagnosis, and that he was not acting as a physician when he arranged to have the plaintiff taken to the V.A. Hospital. He claims that the cause of action for false imprisonment is not based on anything that defendant did in rendering professional services, but on something quite apart and separate which occurred after the professional services were over.

"Plaintiff has attempted to drawn an analogy between this case and a hypothetical case where a doctor, called to treat a patient, gratuitously hits the patient in the mouth. He argues, quite correctly, that an action for assault and battery arising therefrom is not based upon the professional services. I would go even farther and hypothesize the case of a doctor, examining a female patient, who proceeds to make a sexual assault upon her. The sexual assault, even though it arises as a result of the examination, is not in any way a part of the doctor's professional services (at least by generally accepted standards), and therefore an action based upon it is not based upon professional services.

"But it seems to me that the analogy does not hold when we apply it to the instant case. Hitting a patient in the mouth, or making a sexual assault upon a female patient, is not normally a part of the professional services customarily rendered by a physician. Sending a patient to a hospital after he has been diagnosed ill is a part of such professional services. In this case, the defendant made a medical diagnosis of the plaintiff, decided he was mentally ill, and then sent him to a mental hospital. We are of course not concerned with whether the action was wrongful, but with whether it was a part of the professional services rendered by the doctor to the plaintiff. It seems to me that it clearly is."

In arriving at the conclusions he did in the foregoing quotation from his opinion, we believe the judge made a choice between conflicting inferences.

In *Sheets* v. *Burman* (5th Cir. 1963) 322 F. 2d 277, the district court had granted summary judgment in a malpractice case against a physician on the grounds the action was barred by lapse of time and plaintiff appealed. The services were rendered in Indiana. The doctor moved to Louisiana for one year, returned to Indiana briefly and then moved to Mississippi where the suit was filed. In reversing the summary judgment the Court of Appeals of the Fifth Circuit said, at 278:

> "In order for the court to issue a summary judgment under Rule 56, *there must be no disputed* questions of fact or *conflicting inferences* to be drawn *from undisputed facts* which, if settled against the moving party, would allow the plaintiff to recover. Stanley v. Guy Scroggins Construction Co., 5 Cir., 1961, 297 F. 2d 374; Braniff v. Jackson Ave. Gretna Ferry, Inc., 5 Cir., 1960, 280 F. 2d 523. A claim barred by the applicable statute of limitations may be properly disposed of by summary judgment procedure. Ayers v. Davidson, 5 Cir., 1960, 285 F. 2d 137. If, however, there is a disputed factual issue as to whether the suit was timely brought the plaintiff must be allowed to present evidence on this point. R. J. Reynolds Tobacco Co. v. Hudson, 5 Cir., 1963, 314 F. 2d 776." (Emphasis added.)

[and at 280]

> "In the case before us there is a dispute as to when the doctor-patient relationship ended. The defendant contends that it was terminated, at the latest in 1950, when he moved to Louisiana. Mrs. Sheets urges that it continued to exist until 1954, when Dr. Burman made an examination of her. *There are conflicting inferences which can be drawn from the admitted facts* that Dr. Burman left Indiana for one year, but then examined Mrs. Sheets at least once on his return." (Emphasis added.)

We recognize that the lines of demarcation between evidentiary facts (or underlying facts), ultimate facts, inferences,

conclusions of fact and conclusions of law are so blurred, indistinct, and undefinable that anything approaching unanimity of legal opinion as to the proper classification in any particular instance is unattainable.[6] But the mere fact that plaintiff's counsel is able to make a plausible argument that this action is not based on the rendition of professional services, clearly indicates that there is at least a doubt, which is more than merely speculative, that the undisputed testimony of the defendant can lead only to the conclusion reached by the court. In *Wozniczka* v. *McKean* (1969), 144 Ind. App. 471, 247 N. E. 2d 215, 230, 17 Ind. Dec. 401, 424, we said: "A case is not one to be decided on summary judgment where, though the basic facts are not disputed, parties in good faith may nevertheless disagree about inferences to be drawn from the facts." In *Mayhew* v. *Deister*[7] quoting from *Greenebaum Mortgage Company* v. *Town and Garden Associates*,[8] we said: " 'In deciding whether there is an issue of material fact in a case, *all doubts* must be resolved against the party asking for a summary judgment' ". (Our emphasis.) We there also quoted the following from Barron and Holtzoff:[9]

> " 'One who moves for summary judgment has the burden of demonstrating clearly that there is no genuine issue of fact. Any doubt as to the existence of such an issue is resolved against him. The evidence presented at the hearing is liberally construed in favor of the party opposing the motion and he is given the benefit of all favorable inferences which might reasonably be drawn from the evidence.' " (244 N. E. 2d at 451, 16 Ind. Dec. at 521.)

In *Wozniczka* v. *McKean, supra,* we spoke of the trial court's discretion to postpone consideration of a motion for summary judgment until after a trial when in doubt as to

6. See the majority and dissenting opinions in *Block* v. *Fruehauf Trailer Division* (1969), 146 Ind. App. 70, 252 N. E. 2d 612, 19 Ind. Dec. 489.
7. 144 Ind. App. 111, 244 N. E. 2d 448, 451, 16 Ind. Dec. 516, 520 (1969).
8. 385 F. 2d 347 (7th Cir. 1967)
9. 3 FEDERAL PRACTICE and PROCEDURE (WRIGHT ED.) 138, § 1235.

whether a genuine issue of material fact exists.[10] Neither this court nor a trial court should seize upon a mere speculative doubt to avoid the work necessary to understand and decide questions presented by a motion for summary judgment or by an appeal from the granting of a summary judgment. Conversely, however, neither court should hesitate to recognize the existence of genuine doubt merely because summary judgment or the affirmance of a summary judgment appears to be the most expeditious means of terminating litigation which may seem to be of doubtful merit.[11]

The dispute as to whether plaintiff's cause of action is based on professional services rendered more than two years prior to the commencement of this action should be submitted to the jury for trial. Indiana Rules of Procedure, TR 42 (B) and TR 42 (C) authorize the trial court to submit this separate issue for trial prior to trial on the merits if the court, in the exercise of sound discretion, finds that good cause exists for such separate trial.

We would also add the suggestion that since the limitation statute on which defendant relies (Burns § 2-627) imposes a harsh rule in holding infants and incompetents to the same standard of responsibility as competent adults it should be strictly construed against defendants who invoke it. The term "professional services" should be given the narrowest possible interpretation. Defendants who receive the benefits of that statute are highly favored over non-professional defendants and over defendants of other professions. In our opinion, an action should not be held to be based on the rendition of "professional services" (for the purpose of barring it by the statute) unless the rendition of some service which cannot legally be rendered except by, or under the supervision of, a licensed physician, dentist, or surgeon is an integral and essential part of the cause of action.

10. See *Williams* v. *Howard Johnson, Inc.*, 323 F. 2d 102 (4th Cir. 1963).

11. This is not intended as a comment on the apparent merit of the case. We are speaking abstractly.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Pfaff and Sharp, JJ., concur;

Hoffman, P. J., dissents with opinion.

## DISSENTING OPINION

HOFFMAN, P.J.—I am unable to agree with the majority opinion for the following reasons:

1. That no genuine issue as to any material fact exists.

2. An erroneous interpretation of Acts 1941, ch. 116, § 1, p. 328, Ind. Stat. Anno., § 2-627, Burns' 1967 Replacement.

This appeal arises from a summary judgment in favor of defendant-appellee.

The evidence presented upon which the summary judgment was entered included pleadings (complaint, answer, special answer and replies), plaintiff's answer to interrogatories, defendant's party examination, affidavit of defendant, a motion for summary judgment and a response thereto.

The plaintiff, in response, directs the court's attention to certain statements made by defendant in his discovery deposition, answer of plaintiff in response to interrogatories, and certain statements in defendant's affidavit. In so doing appellant is attacking the motion for summary judgment on two grounds 1) the unsoundness of mind of appellant, and 2) the showing that no doctor-patient relationship existed.

The first ground can present no question of fact because appellant admits that he was of unsound mind before, on and after May 7, 1958.

The second ground can present no question of fact because a doctor-patient relationship was not material to the application of the malpractice statute of limitations, § 2-627, *supra*. This Act makes no mention of such relationship. The application of the statute of limitations turns upon the un-

ambiguous phrase "based upon professional services rendered." A doctor-patient relationship is not required to bring the cause of action within a malpractice statute of limitations. *Merchants National Bank* v. *Morriss,* 269 F. 2d 363 (1st. Cir. 1959).

A physician may render professional services without the existence of a doctor-patient relationship. When a physician operates on the wrong person, he is rendering professional services, but no doctor-patient relationship is in existence.

No affidavits were filed by plaintiff in opposition to the motion for summary judgment. No facts were presented to the trial court to show that the defendant was not rendering professional services as a physician when the acts complained of were being performed. The only denial appears in the pleading.

Ind. Rules of Trial Procedure, TR 56(E), provides, in pertinent part, as follows:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. Denial of summary judgment may be challenged by a motion to correct errors after a final judgment or order is entered."

The record before us reveals that appellee was employed by Purdue University and his duties were "to see to such necessary hospitalization as the particular case, * * * for the protection of such student and all others with whom he had or might be expected to associate, appeared to require." Fulfilling these duties defendant-appellee examined plaintiff-appellant, who was of unsound mind, and found that it was necessary to hospitalize him for his protection and the protection of others with whom he had or might be expected to associate.

The uncontradicted evidence discloses that in addition to being of unsound mind, plaintiff-appellant verbally threatened to shoot certain students and members of the faculty. The physician (appellee here) then caused plaintiff to be hospitalized. The facts or his stated reasons for doing so are not disputed. No reasonable inference can be drawn from such facts other than that the physician was rendering professional services and such action clearly falls within the malpractice statute of limitations.

The inferences to be drawn from the evidence must be reasonable inferences and not mere speculation or conjecture. The mere fact that a person's counsel seems to be able to make a plausible argument, superficially worthy of belief, speaks well of counsel but forms no basis upon which to decide here whether or not a genuine issue of material fact exists. Counsel's arguments are not *evidence* under TR 56, *supra,* to be considered when ruling on a motion for summary judgment. There is not a scintilla of evidence in the record that the physician was acting in a capacity other than professional when he examined appellant and placed him in the hospital.

The majority opinion cites *Sheets* v. *Burman* (5th Cir. 1963), 322 F. 2d 277, which supports the well-known principle to be applied in a summary judgment case that "there must be no disputed questions of fact or conflicting inferences to be drawn from undisputed facts which, if settled against the moving party, would allow the plaintiff to recover." With this I agree. However, the facts of *Sheets* clearly show that there was a genuine issue of fact as to when the statute of limitations (§ 2-627, *supra*) began to run. In the instant case there is no dispute as to when the statute of limitations, if applicable, began to run.

The majority opinion misconstrues the term "professional services" as used in § 2-627, *supra.* The statute only requires that the act in question be based upon professional services

rendered or the failure to render such services. Professional services means that he is acting in his capacity as a duly licensed physician. The test is not whether some other person might render the same service. The statute extends to "physicians, dentists, surgeons, hospitals, sanitariums, or others."

A physician rendering first aid is engaged in professional services although the same might be rendered by a fireman, policeman, boy scout, life guard, mother or any other person. A sick person may be confined in the home, as well as a hospital, and receive identical treatment, yet this does not mean that the hospital does not fall within the provisions of the statute because others might render a similar or comparable service.

The interpretation of the statute as set forth in the majority opinion, in effect, nullifies the statute with the exception of very specialized surgical procedures. Such action is not within the province of the judiciary but is vested solely in the Legislature.

I would affirm the judgment of the trial court.

NOTE.—Reported in 263 N. E. 2d 194.