The ESTATE OF Martha O'NEAL by Personal Representative Therese NEWKIRK, Appellant–Plaintiff,

v.

BETHLEHEM WOODS NURSING AND REHABILITATION CENTER, LLC, Appellee–Defendant.

No. 90A05–0705–CV–271.

Court of Appeals of Indiana.

Dec. 19, 2007.

Alan Verplanck, Daniel G. McNamara, Eilbacher Fletcher, LLP, Fort Wayne, IN, Attorneys for Appellant.

Edward L. Murphy, Jr., Michael A. Barranda, Tina M. Bell, Miller Murphy, LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

The Estate of Martha O'Neal (the "Estate"), by its personal representative, Therese Newkirk, appeals from the trial court's grant of summary judgment in favor of Bethlehem Woods Nursing and Rehabilitation Center, LLC ("Bethlehem"). On appeal, the Estate raises one issue, which we restate as whether the trial court

properly granted summary judgment in favor of Bethlehem. We reverse and remand, concluding that although the trial court properly concluded the professional services statute of limitation applies to Bethlehem, that statute does not control over the Indiana Wrongful Death Act's (the "WDA") statute of limitation.

### Facts and Procedural History[1]

On August 30, 2001, Martha O'Neal fractured her femur. The fracture required surgery at a hospital and rehabilitation at Bethlehem's facility, where O'Neal was admitted on September 10, 2001. Because O'Neal was susceptible to bruising, a Bethlehem employee stated O'Neal would receive a " 'head-to-toe' assessment" upon admission and regular assessments of her physical condition thereafter. Appellant's Appendix at 8. Approximately three to five days after her admission, however, O'Neal's surgical incision was torn because the wheelchair Bethlehem gave her was too small. O'Neal also was left on a bed pan for six hours at some point during her stay. This incident resulted in O'Neal contracting severe decubitus ulcers. On September 22, 2001, following a dialysis treatment, a Bethlehem employee discovered O'Neal lying in a pool of her own blood. O'Neal was transferred to the hospital on the same day, but died on November 6, 2001.

On October 22, 2003, the Estate filed a complaint against Bethlehem alleging three primary claims: 1) Bethlehem breached duties as a common carrier owed to O'Neal; 2) Bethlehem breached its contract with O'Neal; and 3) Bethlehem breached duties owed to O'Neal under the Nursing Home Reform Act. The Estate alleged as alternative claims that Bethlehem was liable under the Indiana Survival Act and the WDA. Bethlehem moved for summary judgment on all of the Estate's claims, designating the Estate's complaint as its sole piece of evidence. Following a hearing on the motion, the trial court made findings of fact and conclusions of law that include the following:

5. Any wrongful act, omission or neglect of [Bethlehem] which caused personal injuries or death to Martha O'Neal whether based in contract, tort, negligence, medical malpractice or professional neglect could only have occurred between September 10, 2001, and September 22, 2001, the period of time Martha O'Neal was in [Bethlehem's] facility.

6. The Complaint in this cause of action was filed on behalf of The Estate of Martha O'Neal by Personal Representative Therese Newkirk on October 22, 2003. The Complaint set forth a "wrongful death action" and a "survival action."

7. September 22, 2001, was the last day Martha O'Neal was in [Bethlehem's] facility and the last possible date on which any cause of action could have accrued. No act, omission nor neglect could have occurred after Martha O'Neal left the facility.

8. Based upon the statutes and case law presented to the Court, it appears clear that a 2 year statute of limitations applies in this case and the statute starts to run from the date of the act, omission or neglect which in this case would be no later than September 22, 2001.

9. Since the Complaint was filed on October 22, 2003, any cause of action with a 2 year statute of limitations beginning to run from the act, omission or neglect would be barred as untimely filed.

---

1. We heard oral argument on November 5, 2007, in the Supreme Court courtroom in Indianapolis, Indiana. We thank counsel for their presentations.

10. Under the "survival action" if this is a medical malpractice claim and Martha O'Neal died from those medical malpractice injuries, the claim or cause of action would terminate at her death. Even if Martha O'Neal died from causes other than the medical malpractice injuries (and the Court notes that there is no evidence to this effect), the cause of action would survive but would have to be commenced within 2 years of the medical malpractice. In this case it was not timely commenced and the cause of action is barred by the statute of limitations.

11. Under the "wrongful death action" the claim must be filed within 2 years of the act, omission, neglect or medical malpractice if Martha O'Neal died from the personal injuries that resulted from the conduct complained of.

12. The only way that any other statute of limitation other than the 2 year statute of limitations measured from the act, omission or neglect would apply would be if Martha O'Neal died from other causes than the personal injuries complained of i.e. automobile collision, homicide, natural disaster, etc. then the cause of action would be timely filed if done so within 2 years of the date of death of Martha O'Neal. But there is no evidence that Martha O'Neal died of anything other than the personal injuries which form the basis of the Complaint.

*Id.* at 5–6. Based on these findings and conclusions, the trial court granted Bethlehem's motion in its entirety. On appeal, the Estate challenges only the trial court's grant of summary judgment on the wrongful death claim.

*Discussion and Decision*

### I. Standard of Review

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). When we determine the propriety of an order granting summary judgment, we use the same standard of review as the trial court. *Ryan v. Brown,* 827 N.E.2d 112, 116 (Ind.Ct.App.2005). "The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Id.* at 117. If the moving party meets these two requirements, then the burden shifts to the non-moving party to show the existence of a genuine issue of material fact by setting forth specifically designated facts. *Id.* "We must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party." *Id.*

### II. Propriety of Trial Court's Decision [2]

■ The propriety of the trial court's grant of summary judgment ultimately

2. This part of our opinion gives precise meaning to the terms "apply" and "control" in discussing the three statutes of limitation at issue. "Apply" refers to the threshold determination of whether the defendant meets the definitional criteria to receive the benefit of a particular statute of limitation. The MMA's statute of limitation, for example, "applies," if, among other things, the defendant is a "health care provider" within the meaning of Indiana Code section 34–18–2–14 and is

"qualified" within the meaning of Indiana Code section 34–18–3–2.

The meaning of "control" is better understood through a brief overview of a wrongful death claim. A wrongful death claim includes both the wrongful death claim itself and the underlying theory of liability upon which the claim is based. Both the wrongful death claim and the underlying theory of liability have statutes of limitation. To illustrate, if the defendant shot the victim and the

turns on which of three statutes of limitation control the Estate's wrongful death claim: 1) the Indiana Medical Malpractice Act (the "MMA"), Indiana Code section 34–18–7–1(b); 2) the professional services statute, Indiana Code section 34–11–2–3; or 3) the WDA, Indiana Code section 34–23–1–1.[3] Both the MMA's statute of limitation and the professional services statute of limitation are "occurrence based," which means they accrue when the conduct that caused the damage occurs. *Levy v. Newell*, 822 N.E.2d 234, 236 (Ind.Ct.App.2005); *Carrow v. Streeter*, 410 N.E.2d 1369, 1374 (Ind.Ct.App.1980). In contrast, the WDA's statute of limitation accrues when the injured person dies. *Louisville E. & St. L.R. Co. v. Clarke*, 152 U.S. 230, 237, 14 S.Ct. 579, 38 L.Ed. 422 (1894) (applying Indiana law). That different events cause these statutes of limitation to accrue creates a dilemma: which controls when a victim dies from negligent conduct, but more than two years have elapsed since the conduct occurred? If either the MMA's statute of limitation or the professional services statute of limitation controls, the wrongful death claim is time-barred. However, if the WDA's statute of limitation controls, the victim's personal representative may timely file a claim within two years from the date of the victim's death.

This dilemma exists in the present case. The Estate filed its complaint on October 22, 2003, more than two years after the last date upon which Bethlehem's negligent conduct could have occurred, but less than two years from the date of O'Neal's death. Bethlehem argues either the MMA's statute of limitation or the professional services statute of limitation controls, while the Estate argues the WDA's statute of limitation controls. Although the trial court concluded that the WDA's statute of limitation did not control, it did not explicitly state which of the remaining two statutes of limitation did. *See* Appellant's App. at 5. ("[I]t appears clear that a 2 year statute of limitations applies in this case and the statute starts to run from the date of the act, omission or neglect....."). Thus, the propriety of the trial court's grant of summary judgment initially turns on whether the MMA's statute of limitation or the professional services statute of limitation applies to Bethlehem. *See supra*, note 2. If either statute applies, we must then determine whether it controls over the WDA's statute of limitation. *See id.*

### A. Applicability of the Medical Malpractice Act

The MMA's statute of limitation states in pertinent part:

> A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or should have been provided unless the claim is filed within two (2) years

---

victim died, the victim's personal representative would have a wrongful death claim against the defendant, with battery as the theory of liability. "Control" therefore refers to which of two statutes of limitation, wrongful death or battery in this example, determines the time period within which the wrongful death claim must be filed.

**3.** Because wrongful death is a statutory right of action, Indiana Code section 34–23–1–1 technically is not a statute of limitation, but a "non-claim statute." *Southerland v. Ham-*

*mond*, 693 N.E.2d 74, 77 (Ind.Ct.App.1998). For purposes of this case, however, the difference between a statute of limitation and a non-claim statute is irrelevant. *See id.* (explaining the difference between a statute of limitation and a non-claim statute is that the latter is not subject to equitable exceptions such as tolling). Thus, for ease of reference, and because the cases discussed below refer to Indiana Code section 34–23–1–1 as a statute of limitation, we will describe it as such.

after the date of the alleged act, omission, or neglect. . . .

Ind.Code § 34–18–7–1(b). The Estate argues the MMA's statute of limitation does not apply for two reasons: 1) Bethlehem is not a "qualified" health care provider; and 2) the Estate's wrongful death claim is not based on medical malpractice. Again, the trial court did not explicitly state the MMA's statute of limitation applied to Bethlehem, concluding instead that "it appears clear that a 2 year statute of limitations applies in this case. . . ." Appellant's App. at 5.

█ Regarding the Estate's first reason supporting its argument that the MMA's statute of limitation does not apply to Bethlehem, Indiana Code section 34–18–3–1 states:

> A health care provider who fails to qualify under this article is not covered by this article and is subject to liability under the law without regard to this article. If a health care provider does not qualify, the patient's remedy is not affected by this article.

For a health care provider to be "qualified" it must "(1) cause to be filed with the commissioner proof of financial responsibility established under IC 34–18–4; and (2) pay the surcharge assessed on all health care providers under IC 34–18–5." Indiana Code § 34–18–3–2.

Bethlehem has not designated evidence indicating it meets the qualification requirements of Indiana Code section 34–18–3–2. Instead, the only designated evidence addressing the nature of Bethlehem's business is an allegation in the Estate's complaint that Bethlehem "maintains an extended care facility located at Fort Wayne, Indiana." Appellant's App.

at 7. This evidence is insufficient to satisfy Bethlehem's prima facie burden of establishing its status as a qualified health care provider. *Cf. Whitaker v. St. Joseph's Hosp.*, 415 N.E.2d 737, 742–43 (Ind.Ct.App.1981) (reasoning the defendants made a prima facie showing of their status as qualified health care providers because they designated an affidavit from the Commissioner of the Department of Insurance confirming their status as such). Thus, it follows that the trial court erred to the extent it based its grant of summary judgment on a conclusion that the MMA's statute of limitation applied to Bethlehem.[4]

### B. Applicability of the Professional Services Statute

█ The professional services statute of limitation states:

> An action of any kind for damages, whether brought in contract or tort, based upon professional services rendered or which should have been rendered, may not be brought, commenced, or maintained, in any of the courts of Indiana against physicians, dentists, surgeons, hospitals, sanitariums, or others, unless the action is filed within two (2) years from the date of the act, omission, or neglect complained of.

Ind.Code § 34–11–2–3. The Estate argues the professional services statute of limitation does not apply because its wrongful death claim is not "based on professional services rendered or which should have been rendered." *Id.* Bethlehem counters that the statute applies for two reasons: 1) the Estate waived its right to argue the statute's applicability on appeal because it did not argue the issue to the trial court; and 2) waiver notwithstanding, the statute applies because the

---

4. We reiterate that the trial court's findings of fact and conclusions of law did not explicitly state which statute of limitation applied.

Estate's wrongful death claim "stems from the failure of [Bethlehem] to render services to [O'Neal]." Appellee's Brief at 13.

■ We are convinced that the Estate has not waived its right to argue the statute's applicability for two reasons. First, although not readily apparent, the record indicates the Estate did argue the statute's applicability to the trial court. At the hearing on Bethlehem's summary judgment motion, the Estate requested, and was granted, thirty days to respond to Bethlehem's argument because Bethlehem raised the argument two days prior to the hearing and the Estate was not prepared to address it. In its response, the Estate acknowledged that Bethlehem "takes the alternative, novel, position that regardless of whether the Medical Malpractice Act applies; Indiana's applicable statute of limitations containing a two year occurrence based statu[t]e applies" and argued that such a position "urges this court to completely ignore stare decisis...." Appellant's App. at 32. Although the Estate's response does not state so explicitly, we are convinced its statement regarding "Indiana's applicable statute of limitations containing a two year occurrence based statu[t]e" is a reference to the professional services statute of limitation. *Id.* We also are convinced that this statement and the argument following it constitutes a sufficient argument to the trial court to avoid waiver.

■ Second, even if we concluded the Estate did not argue the statute's applicability to the trial court, it does not necessarily follow that waiver applies. "A party generally waives appellate review of an

issue or argument unless the party raised that issue or argument before the trial court." *GKC Ind. Theatres, Inc. v. Elk Retail Investors, LLC,* 764 N.E.2d 647, 652 (Ind.Ct.App.2002). The rationale for this rule is that it "protects the integrity of the trial court; it cannot be found to have abused its discretion as to an issue that it never had an opportunity to consider." *Brower Corp. v. Brattain,* 792 N.E.2d 75, 78 n. 2 (Ind.Ct.App.2003). The rationale does not apply here, however, because the trial court did have the opportunity to address the statute's applicability. In this respect, the case upon which Bethlehem bases its waiver argument, *Johnson v. Parkview Health Sys., Inc.,* 801 N.E.2d 1281, 1288 (Ind.Ct.App.2004), *trans. denied,* is distinguishable. There the plaintiff's argument was waived because she argued a new theory of recovery at the appellate level, whereas here the Estate is merely countering Bethlehem's argument. Bethlehem cannot base its waiver argument on the Estate's absence of argument to the trial court when Bethlehem already had brought the issue to the trial court's attention.

Although waiver does not apply, the question remains whether there is a genuine issue of material fact regarding the applicability of the professional services statute of limitation to Bethlehem. The parties appear to agree that for the statute to apply, Bethlehem's conduct must have been "based on professional services rendered" within the meaning of the statute. Ind.Code § 34–11–2–3.[5] The Estate argues that Bethlehem's conduct—leaving

---

**5.** Bethlehem also must be a "physician [ ], dentist [ ], surgeon [ ], hospital [ ], sanitarium [ ], or other [ ]" for the statute to apply. *Id.* Because the Estate does not challenge whether the "or other" portion of this provision applies to Bethlehem, *see Kroger Co. v. Estate of Hinders,* 773 N.E.2d 303, 307 (Ind.Ct.App.

2002) (concluding that "others" within the meaning of the professional services statute of limitation refers to "the unambiguous and exclusive list of health care providers defined in Indiana Code section 34–11–2–3"), *trans. denied,* we will assume for purposes of this opinion that it does.

O'Neal on a bed pan for six hours—is not based on professional services rendered because Bethlehem "did not *decide* in the exercise of its professional judgment to leave Mrs. O'Neal unattended on her bed-pan and it would not require expert testimony to present this aspect of a case to a jury." Appellant's Reply Brief at 6 (emphasis in original). Bethlehem does not explicitly explain why its conduct is based on professional services rendered, but suggests that placing O'Neal in an inadequate wheel chair and leaving her on a bed pan for "prolonged periods of time" necessarily involve the rendering of professional services. Appellee's Br. at 14.

■ Our research reveals that *Meier v. Combs*, 147 Ind.App. 617, 263 N.E.2d 194 (1970), is the only Indiana case to address what constitutes professional services rendered within the meaning of the professional services statute of limitation. The plaintiff in *Meier* filed a false imprisonment claim more than two years after the incident occurred. The conduct supporting the claim was that the defendant, a physician, diagnosed the plaintiff with a mental illness and ordered police officers to transport him to a mental hospital. In reversing the trial court's grant of sum-

mary judgment in favor of the defendant, a panel of this court concluded there was a genuine issue of material fact regarding whether the conduct supporting the false imprisonment constituted professional services rendered. *Id.* at 623, 263 N.E.2d at 198. Critical to the court's conclusion was that there were "conflicting inferences" regarding when the physician-patient relationship ended; that is, the evidence supported a finding either that the relationship terminated upon diagnosis, in which case the professional services statute of limitation would not apply, or that the relationship existed when the defendant made the decision to transport the plaintiff to a mental hospital, in which case the professional services statute of limitation would apply. *See id.* Thus, *Meier* indicates that a physician-patient relationship (or, more generally, a health care provider-patient relationship) is important in determining whether the professional services statute of limitation applies.[6]

Here, the designated evidence indicates there was a health care provider-patient relationship[7] between Bethlehem and O'Neal. The complaint states that one of O'Neal's daughters told a Bethlehem employee about O'Neal's susceptibility to

---

**6.** It is also important to note the *Meier* court cautioned that a reviewing court should interpret the applicability of the professional services statute narrowly:

We would also add the suggestion that since the limitation statute on which defendant relies ... imposes a harsh rule in holding infants and incompetents to the same standard of responsibility as competent adults it should be strictly construed against defendants who invoke it. The term ["]professional services["] should be given the narrowest possible interpretation. Defendants who receive the benefits of that statute are highly favored over non-professional defendants and over defendants of other professions. In our opinion, an action should not be held to be based on the rendition of ["]professional services["] (for

the purpose of barring it by the statute) unless the rendition of some service which cannot legally be rendered except by, or under the supervision of, a licensed physician, dentist, or surgeon is an [integral] and essential part of the cause of action.

*Id.* at 625, 263 N.E.2d at 198. However, this observation is diluted somewhat in the context of the present case because the *Meier* court's cautionary tone was based on its concern that the statute treated "infant [] and incompetent []" patients on par with other patients. *Id.*

**7.** We recognize that the term "health care provider" is defined under the MMA, *see* Ind. Code § 34–18–2–4, but use it here to generally describe Bethlehem's role in its relationship with O'Neal.

bruising and that the employee agreed to give O'Neal a " 'head-to-toe' assessment" upon admission, regular assessments during shift changes, and treatment from a nurse who specialized in wound care. Appellant's App. at 8. The complaint also indicates that O'Neal was admitted to Bethlehem's facility following these discussions. Although it would have been helpful for Bethlehem to designate additional evidence describing the nature of its relationship with O'Neal,[8] we are convinced their relationship can generally be described as that of a health care provider and a patient.

Although we agree with the *Meier* court that the existence of a relationship such as the one between Bethlehem and O'Neal is important in determining whether the defendant's conduct was based on professional services rendered, it is not dispositive. In this respect, cases addressing whether a claim sounds in medical malpractice, in which case it is subject to the procedural requirements of the MMA, or whether it sounds in ordinary negligence, in which case it is not, are instructive. *See Winona Mem'l Hosp. v. Kuester*, 737 N.E.2d 824, 827 (Ind.Ct.App.2000) (citing cases). These cases have stated repeatedly that neither the occurrence of the injury at what can generally be described as a healthcare facility nor the plaintiff's status as a patient are dispositive in determining whether the claim sounds in medical malpractice. *Madison Ctr., Inc. v. R.R.K.*, 853 N.E.2d 1286, 1288 (Ind.Ct.App.2006), *trans. denied; Doe by Roe v. Madison Ctr. Hosp.*, 652 N.E.2d 101, 104 (Ind.Ct.App. 1995), *trans. dismissed; Midtown Cmty. Health Ctr. v. Estate of Gahl*, 540 N.E.2d 1259, 1261 (Ind.Ct.App.1989), *trans. denied.* The rationale for this rule is that a

contrary rule would result in an unreasonably broad inclusion of claims that were never intended to fall within the MMA's scope. *See Winona Mem'l Found. of Indianapolis v. Lomax*, 465 N.E.2d 731, 734–35 (Ind.Ct.App.1984) (endorsing the plaintiff's argument that a rule providing that every claim by a patient against a health care provider fell under the MMA would be "absurd" because it would include, among other claims, "the claim of a patient who was injured when a light fixture fell on him in his hospital bed" and "the claim of a patient who was slandered by a hospital employee"). Thus, in determining whether a claim sounds in medical malpractice "the test is whether the claim is based on the provider's behavior or practices while 'acting in his professional capacity as a provider of medical services.' " *R.R.K.*, 853 N.E.2d at 1288 (quoting *Collins v. Thakkar*, 552 N.E.2d 507, 510 (Ind. Ct.App.1990), *trans. denied* ). In making this determination, a reviewing court must look to the substance of the claim. *Doe by Roe*, 652 N.E.2d at 104.

Applying this test has resulted in hairline distinctions between claims that sound in medical negligence and those that sound in ordinary negligence. Our decisions in *Putnam County Hosp. v. Sells*, 619 N.E.2d 968 (Ind.Ct.App.1993), and *Harts v. Caylor–Nickel Hosp., Inc.*, 553 N.E.2d 874 (Ind.Ct.App.1990), *trans. denied*, illustrate this point. The plaintiff in *Sells* was injured when she fell out of her bed following surgery at the defendant's hospital. The plaintiff claimed the defendant was negligent based on its staff's failure to properly monitor her during her recovery. In support of this claim, the plaintiff alleged that she was under anesthesia when she fell and that the defendant's staff had

---

**8.** For example, the complaint suggests Bethlehem and O'Neal executed a written contract, which presumably would have provided further insight into the nature of their relationship, but that contract was not included in Bethlehem's designated evidence.

not placed bedrails designed to prevent her from falling in the proper position.

In concluding the plaintiff's claim "falls squarely within the scope of the [MMA]," the court distinguished the claim before it from the plaintiff's claim in *Harts. Sells,* 619 N.E.2d at 971. The plaintiff in *Harts* was injured when he fell out of his hospital bed after the bedrail he was using for support collapsed. The *Harts* court concluded the plaintiff's claim sounded in ordinary negligence. The *Sells* court, however, explained that the claim in *Harts* sounded in ordinary negligence because "[t]he bedrailing was in place but did not work properly." 619 N.E.2d at 971. In contrast, the *Sells* court noted that the claim before it did not involve "an allegation of faulty premises or equipment," *id.* at 971, but an "allegation challenging the health care decisions of the Hospital made in regard to [the plaintiff] while she was under general anesthesia recovering from a surgical procedure," *id.* (quotation marks and citation omitted). Thus, *Sells* and *Harts* stand for the proposition that a claim alleging injury based on the health care provider's failure to properly administer equipment related to the patient's care sounds in medical malpractice, while a claim alleging injury based on failure of the equipment itself sounds in ordinary negligence.

Applying this proposition to the Estate's claim, and recognizing that consistent with *Meier* a health care provider-patient relationship existed between Bethlehem and O'Neal, we conclude that the Estate's claim sounds in medical malpractice. Like the claim in *Harts,* the Estate's claim contains allegations challenging Bethlehem's healthcare decisions, specifically that Bethlehem "left [O'Neal] to sit for prolonged periods of up to six (6) hours in a wheelchair and permitted [her] to remain on a bedpan for a period of at least six (6)

hours." Appellant's App. at 8. The only allegation approaching a claim of faulty equipment is that "O'Neal was placed in a wheelchair which was too small for her," but even this allegation is the result of Bethlehem's decision-making process because it implies that had Bethlehem placed O'Neal in a proper wheelchair, her surgical incision would not have been torn. In contrast, the claim in *Harts* sounded in ordinary negligence because the bedrail was properly placed, but malfunctioned.

In light of this designated evidence, we conclude Bethlehem made a prima facie showing of no genuine issue of material fact regarding the applicability of the professional services statute of limitation. Because the Estate has not designated evidence to rebut this showing, it follows that the trial court did not err to the extent it concluded the professional services statute of limitation applies to Bethlehem.

### C. Professional Services Statute and Wrongful Death Act

Although the professional services statute of limitation applies to Bethlehem, the propriety of the trial court's grant of summary judgment ultimately turns on whether it controls over the WDA's statute of limitation. *See supra,* note 2. Again, the professional services statute of limitation states:

> An action of any kind for damages, whether brought in contract or tort, based upon professional services rendered or which should have been rendered, may not be brought, commenced, or maintained, in any of the courts of Indiana against physicians, dentists, surgeons, hospitals, sanitariums, or others, unless the action is filed within two (2) years from the date of the act, omission, or neglect complained of.

Ind.Code § 34-11-2-3. The WDA's statute of limitation states in pertinent part:

When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within two (2) years.

Ind.Code § 34–23–1–1.

Bethlehem argues the professional services statute of limitation controls based on our supreme court's decision in *Ellenwine v. Fairley,* 846 N.E.2d 657 (Ind.2006). In *Ellenwine,* the victim's personal representative filed a child wrongful death claim based on the defendant's medical malpractice. Although the issue was whether the MMA's statute of limitation controlled over the Child Wrongful Death Act's statute of limitation, the court also addressed whether the MMA's statute of limitation controlled over the WDA's statute of limitation. Regarding the latter issue, the court concluded that if an adult victim of medical malpractice dies within two years of the occurrence of the malpractice, the victim's personal representative must file a wrongful death claim within the MMA's limitation period.[9] *Id.* at 665–66. In other words, in a wrongful death claim based on medical malpractice, the MMA's statute of limitation controls over the WDA's statute of limitation. *See id.*

Bethlehem argues *Ellenwine* applies in this case because, based on the similarity in language between the MMA's statute of limitation and the professional services statute of limitation, "[a]pplying the *Ellenwine* approach to the case at bar fosters the 'workable' rule presented by the Supreme Court." Appellee's Br. at 8. The professional services statute of limitation is not only similar in language, but also is the MMA's predecessor statute of limitation:

> [The professional services statute of limitation] began its existence in 1941 with the passage of an act concerning civil malpractice proceedings. Ind.Code § 2–627 (1946). Although this provision of the Indiana Code has been recodified several times since its inception, the language of the statute remains intact. Until the passage of the Medical Malpractice Act in 1975, this statute was used to determine the limitation period for all medical malpractice suits.

*Estate of Hinders,* 773 N.E.2d at 306. However, Bethlehem has not explained how similarity alone renders *Ellenwine* controlling.

In this respect, it is important to consider the reasons the *Ellenwine* court reached its conclusion that a wrongful death claim based on medical malpractice must be filed within the MMA's limitation period. First, the court reasoned that its conclusion furthered one of the legislature's goals in enacting the MMA; namely, prompt litigation of medical malpractice claims:

> Because a patient who has been the victim of medical negligence could well live many more than two years beyond the occurrence of the malpractice only to ultimately die as a result of it, applying the two-years-after-death limitations period of the wrongful death statute where a patient dies from the malpractice seems to us totally inconsistent with this legislative goal.

9. The court's conclusion assumed "that the discovery of the occurrence of the medical malpractice takes place when it is reasonably possible to file the claim within the limitation period. Special filing rules can apply when it is not." *Id.* at 665 n. 1 (citing *Booth v. Wiley,* 839 N.E.2d 1168, 1172 (Ind.2005); *Boggs v. Tri–State Radiology, Inc.,* 730 N.E.2d 692, 697–98 (Ind.2000); *Martin v. Richey,* 711 N.E.2d 1273, 1284–85 (Ind.1999)). These special filing rules do not apply in this case because the Estate does not argue that it was not reasonably possible to discover Bethlehem's negligence within either the MMA's or the WDA's limitation period.

*Ellenwine*, 846 N.E.2d at 664. Second, the court reasoned that requiring a personal representative to file within the MMA's limitation period is consistent with other procedural requirements of the MMA with which the personal representative must comply to properly file a wrongful death claim based on medical malpractice. *Id.* ("[J]ust as a fair reading of the MMA indicates that the medical review panel requirements must be complied with in order to bring a wrongful death claim based on medical negligence, so too for the limitations provision."). Finally, the court noted that since *Frady v. Hedgcock*, 497 N.E.2d 620, 622 (Ind.Ct.App.1986), *trans. denied*, where a panel of this court held that the MMA's statute of limitation controls in a wrongful death claim based on medical malpractice, the legislature had not disturbed the *Frady* court's holding. *Ellenwine*, 846 N.E.2d at 664 ("[T]o the extent there is any question about our reading of the legislative intent, we believe that a sufficient period of time has passed since *Frady* was decided that there has been legislative acquiescence.").

■ We are not convinced that our supreme court's conclusion in *Ellenwine* compels a conclusion that the professional services statute of limitation controls over the WDA's statute of limitation. Although we recognize that arguably one of the legislature's goals in enacting the professional services statute of limitation was to allow for prompt litigation of claims against providers of professional services, *see Toth v. Lenk*, 164 Ind.App. 618, 620–21, 330 N.E.2d 336, 338 (1975) (describing the professional services statute of limitation as "more restrictive" than the general statute of limitation governing personal injury claims, currently Indiana Code section 34–11–2–4, because the latter statute could be interpreted to accrue long after the conduct giving rise to the injury occurred), it

lacks the procedural requirements that accompany the MMA's statute of limitation.

In this respect, *Ellenwine* is not the only case to address whether a particular statute of limitation controls over the WDA's statute of limitation. In *Holmes v. ACandS, Inc.*, 709 N.E.2d 36, 43 (Ind.Ct. App.1999), *aff'd on reh'g*, 711 N.E.2d 1289, *trans. denied*, a panel of this court declined to extend the *Frady* court's holding to a wrongful death claim based on product liability. Instead, the court held that "a product liability claim for wrongful death resulting from an asbestos related disease or injury accrues upon the date of death of the decedent." *Id.* at 44. Critical to the court's holding, and its rejection of the *Frady* court's holding, was its recognition that "the comprehensiveness of the medical malpractice act is evidence of the legislature's intent that it should prevail over the more general wrongful death statute." *Id.* In other words, because Indiana's product liability statutes were less comprehensive than the MMA, the court could not infer that the legislature intended the product liability statute of limitation to control over the WDA's statute of limitation.

Consistent with the court's holding in *Holmes*, we conclude that the professional services statute of limitation is less comprehensive than the MMA and therefore does not control over the WDA's statute of limitation. Thus, it follows that the WDA's statute of limitation controls, the Estate's wrongful death claim was timely filed, and the trial court erred when it concluded that the Estate's wrongful death claim was time-barred based on the professional services statute of limitation.

## Conclusion

Although the trial court properly concluded the professional services statute of limitation applies to Bethlehem, that statute does not control over the WDA's stat-

ute of limitation. Therefore, because the Estate's wrongful death claim was filed within two years from the date of O'Neal's death, it is timely.

Reversed and remanded.

KIRSCH, J., and BARNES, J., concur.