ATTORNEY FOR APPELLANTS
Jerry Garau
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Edward L. Murphy, Jr.
Heidi K. Koeneman
Fort Wayne, Indiana

# In the
# Indiana Supreme Court

No. 71S03-0605-CV-164

MICHELLE ELLENWINE and
ALVIE ELLENWINE, as Parents
and Natural Guardians of
Dustin Ellenwine, Deceased,

*Appellants (Plaintiffs below)*,

v.

DAWN FAIRLEY, D.O.,

*Appellee (Defendant below)*.

Appeal from the St. Joseph Superior Court, No. 71D06-0110-CP-1497
The Honorable William C. Whitman, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 71A03-0403-CV-124

**May 3, 2006**

**Sullivan, Justice.**

Michelle Ellenwine gave birth to a son, Dustin, on December 19, 1996.  Dr. Dawn Fairley was Michelle's treating physician throughout the pregnancy.  Complications arose during the delivery and within days of the birth one of Dustin's physicians informed Dustin's parents, Michelle and Alvie, that Dustin had suffered brain damage and was experiencing seizures as a

result of oxygen deprivation during delivery. Dustin died on February 2, 1999, when he was two years old.

On October 12, 1999, the Ellenwines filed a proposed medical malpractice complaint against Dr. Fairley with the Indiana Department of Insurance. In the proposed complaint, the Ellenwines alleged that Dr. Fairley's failure to meet the applicable standard of care was the proximate cause of Dustin's injuries and death. On October 23, 2001, the statutory medical review panel issued a unanimous written opinion in favor of the Ellenwines, and seven days later, on October 30, the Ellenwines filed a claim in the trial court under Indiana's Child Wrongful Death Act, Indiana Code Section 34-23-2-1 ("CWDA").

Dr. Fairley filed a motion for summary judgment, arguing that the action was barred by the requirement of the Indiana Medical Malpractice Act, Indiana Code Sections 34-18-1-1, et seq. ("MMA"), that any claim based on medical malpractice be filed within two years of the alleged malpractice. Ind. Code § 34-18-7-1(b) (2004). The trial court agreed and granted the motion. The Court of Appeals reversed, holding that the two-year medical malpractice statute of limitations could not be constitutionally applied to bar the Ellenwines' wrongful death claim because the wrongful death claim did not arise until after the two-year period had lapsed. Ellenwine v. Fairley, 818 N.E.2d 961, 969-70 (Ind. Ct. App. 2004).

**Discussion**

**I**

The Ellenwines' lawsuit maintains that Dustin's injuries and death were due to the negligence of Dr. Fairley on December 19, 1996. As such, their claim was subject to the provisions of the MMA, a statute that applies to claims of personal injury or death proximately caused by a "health care provider," as that term is defined in the MMA. It is worth pausing here to emphasize, as the Court of Appeals correctly did in its opinion, that the substantive claim or cause of action at stake in such cases is the common law claim of negligence by a health care provider proximately causing personal injury or death. We will usually refer to this type of claim in this

2

opinion as "medical malpractice" or just "malpractice." The MMA did not create or establish the medical malpractice claim; it only imposed procedural requirements on the prosecution of them. Chamberlain v. Walpole, 822 N.E.2d 959, 961 (Ind. 2005).

One of the requirements of the MMA is that a proposed medical malpractice complaint first be filed with the Department of Insurance for review by a medical panel before the complaint is filed in court. Another—and central to the resolution of this case—is that the proposed complaint be filed within the limitations period specified in the MMA. The statute of limitations reads as follows:

> A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect, except that a minor less than six (6) years of age has until the minor's eighth birthday to file.

Ind. Code § 34-18-7-1(b) (2004).

As is readily apparent, the Legislature has created a special rule for children who are victims of medical malpractice committed before their sixth birthdays. This case requires us to examine in great detail the applicability of this rule. For ease of discussion, we will simply use the terms "child" or "children" when we are talking about a child or children who is or are the victims of malpractice or alleged malpractice prior to the age of six.

Dustin died on February 2, 1999, about two years and 45 days after the alleged malpractice. The Ellenwines' claim was filed on October 12, 1999, about ten months after Dustin's death. The claim was filed well after the second anniversary of the alleged malpractice but well before what would have been Dustin's eighth birthday.

Assume for the moment that the Ellenwines were properly acting as his legal representatives. Were they entitled under applicable law to file a claim on Dustin's behalf on October 12, 1999, alleging that his injuries and death were caused by medical malpractice? Dr. Fairley ar-

3

gues that they were not because the exception in the MMA allowing a child to file until his eighth birthday "can only apply if the child is alive at the time suit is filed." Pet. to Transfer at 3 (citing Randolph v. Methodist Hosp., 793 N.E.2d 231, 236 (Ind. Ct. App. 2003), transfer denied, 812 N.E.2d 790 (Ind. 2004)).

We agree with Dr. Fairley that the Ellenwines could not file a claim on Dustin's behalf on October 12, 1999, alleging that his injuries and death were caused by medical malpractice. But the reason they could not is not a function of the MMA but rather of the Indiana Survival Statute ("Survival Act"), Indiana Code Sections 34-9-3-1, et seq.

The Survival Act sets forth a series of rules dictating when particular claims or causes of action may and may not be brought by or against the representative of the deceased party. Sections 1 and 4 of the Survival Act provide that if an individual who has a personal injury claim or cause of action dies, the claim or cause of action does not survive and may not be brought by the representative of the deceased party unless the individual dies from causes other than those personal injuries. Ind. Code §§ 34-9-3-1, 34-9-3-4; Kohn v. Norfolk & Western Ry. Co., 966 F.Supp. 789, 791 (N.D. Ind. 1997); Goleski v. Fritz, 768 N.E.2d 889, 891-92 (Ind. 2002). Here the Ellenwines affirmatively contend that the injuries that form the basis of the alleged malpractice caused Dustin's death. As such, the Survival Act mandates that the medical malpractice claim does not survive Dustin's death and may not be brought.

However, had Dustin died from causes other than the alleged malpractice—had he perished, for example, in an automobile accident on February 2, 1999—the Survival Act would have permitted the Ellenwines as Dustin's representatives to bring the malpractice claim because he would have died from another cause. Goleski, 768 N.E.2d at 892. Dr. Fairley contends that in such a circumstance, the Ellenwines would be prohibited from bringing their claim for the reason set forth a moment ago—because the "eighth birthday" exception only applies if the child is alive at the time the suit is filed. We will return to this point in greater detail later in this opinion. Suffice it to say for now that we believe considerations of statutory construction and fairness dictate a different result than Dr. Fairley advances.

4

II

When the Ellenwines filed their lawsuit on October 30, 2001, they appear to have recognized that the Survival Act prevented them from filing a medical malpractice claim as Dustin's representatives. In any event, they did not do so. What they did do was to file a lawsuit against Dr. Fairley in their own rights—not as Dustin's representatives—under the CWDA.

A

Before we discuss Dr. Fairley's contention that it was also too late for the Ellenwines to file under the CWDA, we think it would be useful to try to have clearly in mind two sets of distinctions: (1) the distinction between wrongful death claims generally and child wrongful death claims under the CWDA, and (2) the distinction between medical malpractice claims and CWDA claims. The Court of Appeals also set forth a discussion of these two sets of distinctions, and we do not think we can improve on its explanations.

As to the distinction between wrongful death claims generally and child wrongful death claims under the CWDA, the Court of Appeals said:

> There are two statutory sections which provide the right of a party to bring a wrongful death claim for the death of another. Indiana Code § 34-23-1-1, the Wrongful Death Statute, and Indiana Code § 34-23-2-1, the Child Wrongful Death Statute, . . . provide for recovery. Because the Parents['] claim arises out of the death of their child, only the Child Wrongful Death Statute applies in this case. See <u>Bailey v. Martz</u>, 488 N.E.2d 716, 723 (Ind. Ct. App. 1986) (in discussing the predecessor statutes to the current versions of both wrongful death statutes, held that the Child Wrongful Death Statute provided the only cause of action for wrongful death of a child), <u>trans. denied, superceded on other grounds by statute</u>. Nonetheless, the discussion of the issues in this case is generally applicable to both statutes, and in those instances, we will refer to the cause of action as "wrongful death," which is not to be construed as being solely the Wrongful Death Statute or the Child Wrongful Death Statute. . . . However, recognizing that the two claims are entirely separate, we do not intend to imply that the requirements to file a claim or the damages available under the Wrongful Death Statute are the same as those under the

5

> CWD[A]. <u>See</u> <u>State v. Guziar</u>, 680 N.E.2d 553 (Ind. Ct. App. 1997).

<u>Ellenwine</u>, 818 N.E.2d at 964 n.2. As to the distinction between medical malpractice claims and CWDA claims, the Court of Appeals said:

> This argument necessarily highlights an important distinction between the types of claims which may be brought as a result of alleged malpractice. The first is a negligence claim brought by or on behalf of the injured party. The second, which is at issue in this case, is a wrongful death claim brought by the survivors of the party physically injured by the alleged malpractice. What is clear and obvious is that a negligence claim and a wrongful death claim are two wholly separate causes of actions which must be brought by different parties and which, for the most part, provide damages for separate types of injuries.
>
> A person injured by the negligence of another is entitled to reasonable compensation, which is such sum as would reasonably compensate the victim both for bodily injuries and pain and suffering. <u>Evans v. Buffington Harbor River Boats, LLC</u>, 799 N.E.2d 1103, 1111 (Ind. Ct. App. 2003), <u>trans. denied</u>. To that sum is added past, present, and future expenses reasonably necessary for the plaintiff's treatment and all financial losses suffered, or to be suffered, as a result of the inability to perform one's usual occupation. <u>Id.</u> A claim jointly brought by a child's parents under the CWD[A] allows for the recovery of damages that inure to the benefit of the parents. Ind. Code § 34-23-2-1 (Burns Code Ed. Repl. 1998). The damages which may be recovered include:
> > "(1) for the loss of the child's services;
> > (2) for the loss of the child's love and companionship; and
> > (3) to pay the expenses of:
> > > (A) health care and hospitalization necessitated by the wrongful act or omission that caused the child's death;
> > > (B) the child's funeral and burial;
> > > (C) the reasonable expense of psychiatric and psychological counseling incurred by a surviving parent or minor sibling of the child that is required because of the death of the child;

6

> (D) uninsured debts of the child, including debts for which a parent is obligated on behalf of the child; and
> (E) the administration of the child's estate, including reasonable attorney's fees." Id.
> The only measure of damages which is consistent between those recoverable in a negligence action and those recoverable in a wrongful death action are those for the hospital and health care expenses which arise as a result of the wrongful act which caused the death. As noted by our Supreme Court, the "purpose of the Wrongful Death Statute is not to compensate for the injury to the decedent but rather to create a cause of action to provide a means by which the decedent's survivors may be compensated for the loss sustained by reason of the death." Reeder [v. Harper], 788 N.E.2d [1236, 1242 (Ind. 2003)].
>
> A second important distinction between the two types of claims is when they come into being. A negligence claim arises as soon as the negligent act occurs. A claim for wrongful death, although the negligent act may have ultimately triggered the death, does not exist until the exact moment that the individual dies. See Holmes v. ACand S, Inc., 709 N.E.2d 36, 39 (Ind. Ct. App. 1999) (holding that the wrongful death cause of action accrues when the injured person dies), affirmed on reh'g, 711 N.E.2d 1289, trans. denied. In effect, the fact which gives rise to the wrongful death claim—the death—exhausts the negligence claim. This conclusion is demonstrated by the Survivorship Statute, Indiana Code § 34-9-3-4 (Burns Code Ed. Repl. 1998).

Id. at 964-65 (footnote omitted).


**B**


So what is the applicable statute of limitations when parents seek to recover damages suffered as a result of the wrongful death of their child? The Wrongful Death Act says that they have two years from the date of the child's death. Ind. Code § 34-23-1-1 (2004). Dr. Fairley argues that, where the death is caused by medical malpractice, the two-year occurrence-based statute of limitations contained in the MMA applies. Dr. Fairley cites several decisions of the Court of Appeals to support this position. While we find that authority less than persuasive, in the end we agree that Dr. Fairley is right.

The first case to which Dr. Fairley points is <u>Randolph v. Methodist Hosp.</u>, 793 N.E.2d 231 (Ind. Ct. App. 2003), which we have mentioned and will discuss in detail later in this opinion. <u>Randolph</u>, simply reciting the holding of another case, held that "the two-year statute of limitations found in the medical malpractice act applied to an action for wrongful death based on medical malpractice." <u>Randolph</u>, 793 N.E.2d at 237 (<u>citing</u> <u>Hopster v. Burgeson</u>, 750 N.E.2d 841, 852-53 (Ind. Ct. App. 2001), <u>transfer not sought</u>). <u>Hopster</u> gave the issue more extended treatment but concluded by relying on still a third case, <u>Frady v. Hedgcock</u>, 497 N.E.2d 620, 622 (Ind. Ct. App. 1986), <u>transfer denied</u>. It was <u>Frady</u>, then, that established the principle that the MMA's two-year occurrence-based statute of limitations applies to wrongful death actions based on medical malpractice.

But <u>Frady</u>'s entire discussion on this point is relatively brief:

> The statute of limitations for the Medical Malpractice Act, Indiana Code section 16-9.5-3-1, provides that any claim against a health care provider must be brought "within two [2] years from the date of the alleged act, omission or neglect." In contrast, Indiana Code section 34-1-1-2 provides that any action for wrongful death must be brought "by the personal representative of the decedent within two (2) years." We thus confront the issue of which statute of limitations to apply.
>
> In <u>Warrick Hospital, Inc. v. Wallace</u> (1982), Ind. App., 435 N.E.2d 263, <u>trans. denied</u>, this court held that a plaintiff in a wrongful death action based upon alleged medical malpractice must satisfy the conditions precedent of the wrongful death statute, one of which is the appointment of a personal representative within two (2) years of the death. However, <u>Warrick</u> was overruled this year by our supreme court in <u>Community Hospital v. McKnight</u> (1986), Ind., 493 N.E.2d 775. In that case, the court held that a person pursuing a wrongful death claim need not be appointed the personal representative of the decedent when the claim is based upon alleged medical malpractice. The court's rationale was centered on the clear language of the Medical Malpractice Act pertaining to who may file such an action. This result is harmonious with our conclusion that, "Viewed from the historical perspective we believe the conclusion is inescapable that our General Assembly intended that all actions the underlying basis of which is alleged medical malpractice are subject to the [medical malpractice] act."

> Sue Yee Lee v. Lafayette Home Hospital, Inc. (1980), Ind. App., 410 N.E.2d 1319, 1324, trans. denied.
>
> > We see no reason why Community Hospital is not applicable to the case under consideration. We hold that the statute of limitations for the Medical Malpractice Act is applicable instead of the time period imposed for wrongful death actions. Therefore, an action for wrongful death based upon medical malpractice must be filed within two years of "the date of the alleged act, omission or neglect," not within two years of the date of the death.

Frady, 497 N.E.2d at 621-22.

Thus, the ruling of the Court of Appeals in Frady, upon which it relied in Hopster and Randolph, and which Dr. Fairley presses upon us here, was based on its reading of our decision in Community Hospital. With respect, Community Hospital seems inapposite. First, it did not deal with statutes of limitation at all. More importantly, Community Hospital was a medical malpractice claim; it did not involve a wrongful death claim. The question was whether the procedures of the wrongful death statute were required to be followed when bringing a medical malpractice claim where the patient had died from the alleged malpractice. Answer: no, only the provisions of the MMA had to be followed. We do not see this as precedent one way or the other for answering the issue presented here: whether the procedures of the MMA (specifically, the limitations procedures) are required to be followed when bringing a wrongful death claim where the patient had died from the alleged malpractice.

Having concluded that Frady (and, by extension, Hopster and Randolph) were wrong to rely on Community Hospital in concluding that the two-year occurrence-based statute of limitations applies in wrongful death cases where the patient dies from alleged malpractice, we nevertheless conclude that that is the correct result. One of the principal legislative purposes behind the MMA in general and the two-year occurrence-based statute of limitations in particular was to foster prompt litigation of medical malpractice claims. Because a patient who has been the victim of medical negligence could well live many more than two years beyond the occurrence of the malpractice only to ultimately die as a result of it, applying the two-years-after-death limitations period of the wrongful death statute where a patient dies from the malpractice seems to us

9

totally inconsistent with this legislative goal. Furthermore, just as a fair reading of the MMA indicates that the medical review panel requirements of the MMA must be complied with in order to bring a wrongful death claim based on medical malpractice, so too for the limitations provision. Finally, to the extent that there is any question about our reading of the legislative intent, we believe that a sufficient period of time has passed since Frady was decided that there has been legislative acquiescence.

To summarize our conclusions to this point, consider an adult patient who is the victim of medical negligence who dies within two years of the occurrence of the malpractice.[1] (1) If the death was caused by the malpractice, (a) the malpractice claim (whether brought by the patient or another as the representative of the patient) terminates at the patient's death, Ind. Code § 34-9-3-1(a)(6) (2004); and (b) a wrongful death claim must be filed within two years of the occurrence of the malpractice, see Frady. (2) If the death was from a cause other than the malpractice, (a) the malpractice claim (brought by the patient's legal representative) must be filed within two years of the occurrence of the malpractice, Ind. Code §§ 34-18-7-1(b) (2004); and (b) any wrongful death claim must be filed within two years of the date of death, Ind. Code § 34-23-1-1 (2004).

### III

One point remains for us to consider. Frady and Hopster both were claims under the general wrongful death statute; they did not involve children. Only Randolph implicates the CWDA and only in dicta, as it is very clear from that case that the parent in that case was seeking to bring a medical malpractice claim as the representative of her deceased child and not a claim under the CWDA. Randolph v. Methodist Hosp., 793 N.E.2d 231, 237 (Ind. Ct. App. 2003).

---

[1] We assume (both here and throughout this opinion) that the discovery of the occurrence of the medical malpractice takes place when it is reasonably possible to file the claim within the limitations period. Special filing rules can apply when it is not. See Booth v. Wiley, 839 N.E.2d 1168, 1172 (Ind. 2005); Boggs v. Tri-State Radiology, Inc., 730 N.E.2d 692, 697-98 (Ind. 2000); Martin v. Richey, 711 N.E.2d 1273, 1284-85 (Ind. 1999).

10

Randolph requires further analysis. This was a case in which a child, Kwabene Randolph, not unlike Dustin Ellenwine, suffered severe injuries at birth from which he died seven months later. His mother filed her medical malpractice claim approximately 5-1/2 years later, i.e., almost six years after the alleged malpractice and just before what would have been Kwabene's sixth birthday.

The Court of Appeals grounded its analysis entirely in the MMA; there is no reference to the Survival Act. It concluded that the MMA statute of limitations cut off Kwabene's malpractice claim because the "eighth birthday" exception "applies only to living children and does not apply to extend Kwabene's window for timely filing of a medical malpractice action beyond two years after the occurrence causing the injuries." Id. at 235.

We agree with the result of the Court of Appeals in Randolph but not its reasoning.

We see nothing in the language of the MMA that suggests that the "eighth birthday" exception only applies to children who are living, just as there is nothing in the language of the generally applicable two-year provision that suggests that it only applies to living patients. That is, no one contends that the MMA cuts off the two-year limitations period applicable to adults if the adult dies before the end of the two years. To be sure, the Survival Act does so if, but only if, the death is caused by the malpractice. If the death is from another cause, the claim is still available until the MMA's two-year period expires.

The language used by the Legislature both in the MMA itself and in the Survival Act does not suggest to us in any way an intent to cut off the limitations period otherwise provided for children upon their death. As in the adult situation, the Survival Act (not the MMA) terminates a child's malpractice claim if the death is caused by the malpractice. But Dr. Fairley contends (and Randolph's reasoning suggests) that a child's malpractice claim would also be terminated even if the child's death was from other causes. We think this interpretation clearly contravenes the Legislature's intent expressed in Section 4 of the Survival Act.

11

Granted, Dustin did die from the alleged malpractice, but the distinction just drawn is important here for the following reason. If it is the Survival Act, and not the MMA, that terminates his malpractice claim at death, then there is no basis for saying that the MMA required the Ellenwines to have their CWDA claim on file prior to Dustin's death. Rather, it seems to us that the MMA and CWDA operated together to require the Ellenwines to get their claim on file within the first to expire either of the MMA limitations period (Dustin's eighth birthday) or of the CWDA limitations period (two years from date of death). This, of course, they did and the trial court was wrong to grant Dr. Fairley summary judgment on statute of limitations grounds.

Note that this is entirely consistent with the result in Randolph. The alleged malpractice occurred at Kwabene's birth on October 7, 1991. He died as a result of the alleged malpractice seven months later on May 7, 1992. The medical malpractice claim was filed on September 26, 1997, shortly before what would have been little Kwabene's sixth birthday. As noted several times in this opinion, this claim was properly dismissed because it did not survive Kwabene's death by operation of the Survival Act. And had Kwabene's mother attempted to file a CWDA claim on September 25, 1997, it would have been properly dismissed as not having been filed within two years of the date of death. However, Kwabene's mother could have filed a CWDA claim during the two-year period following his death because that would have been within the MMA limitations period (which ran until Kwabene's eighth birthday) as well as the CWDA limitations period.

This approach seems to us to conform to the language of the relevant statutes and also to the Legislature's broader purposes in fostering prompt litigation of medical malpractice claims while allowing some leeway in cases involving children. Under our formulation, the wrongful death claim of a child who dies due to medical malpractice in infancy or in the first few years of life does not hang over the heads of the health care providers all the way until what would have been the child's eighth birthday. But it does continue for two years after the date of the child's death. This seems to be the balance struck by the Legislature in furthering these broader purposes, and it seems to be a fair and workable one.

12

There is one remaining type of case that warrants mention. Suppose a child with a medical malpractice claim dies in infancy or in the first few years of life from causes other than the malpractice. Remember that in this circumstance, the Survival Act provides that the malpractice claim survives. Ind. Code § 34-9-3-4 (2004). What are the limitations periods applicable, first, to the malpractice claim (brought by the child's legal representative) and, second, to any CWDA claim? We think it apparent that any CWDA claim must be brought no later than two years of the date of death; that is what the plain language of the statute provides. Ind. Code § 34-23-1-1 (2004). The malpractice claim is more problematic. Certainly one could argue from the language of the MMA that the child's representative has until the child's eighth birthday to bring the claim. Recognizing that it is only dicta for purposes of this case, we nevertheless believe that the fairest and most workable rule is one closely analogous to the one described above (where the death was caused by the malpractice): that both the malpractice claim and the CWDA claim must be brought within the first to expire either of the MMA limitations period (the child's eighth birthday) or of the CWDA limitations period (two years from date of death).

We summarize as follows our conclusions with respect to a child patient who is the victim of medical negligence prior to the child's sixth birthday who dies prior to the child's eighth birthday. (1) If the death was caused by the malpractice, (a) the malpractice claim (brought by the legal representative of the child) terminates at the child's death, Ind. Code § 34-9-3-1(a)(6) (2004); and (b) any wrongful death claim must be filed within the first to expire of either the MMA limitations period (the child's eighth birthday) or the CWDA limitations period (two years from the date of death). (2) If the death was from a cause other than the malpractice, both (a) the malpractice claim (whether brought by the patient or another as the representative of the patient) and (b) any wrongful death claim must be filed within first to expire either of the MMA limitations period (the child's eighth birthday) or of the CWDA limitations period (two years from date of death).

## IV

Because the relevant statutes permit the Ellenwines to proceed with their CWDA claim, we have no need to address whether the Open Courts Clause or the Privileges and Immunities Clause of the Indiana Constitution limit their applicability to the Ellenwines' claim.

## Conclusion

We grant transfer, thereby vacating the decision of the Court of Appeals in this case, and reverse the trial court's grant of summary judgment in favor of Dr. Fairley.

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.